1   **WO**

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Nicolai Tavilla, et al.,                    No.   CV11-0270 PHX DGC

10                      Plaintiffs,              **ORDER**

11   v.

12   Cephalon Incorporated, a Delaware
     corporation,

13                      Defendant.

14

15        Defendant Cephalon, Inc. has filed a Motion to Exclude Opinions of Michael

16   Sucher, M.D. and Christine Grubb, Ph.D.   Doc. 42.   Plaintiffs have filed a response

17   (Doc. 51) and Defendant has filed a reply (Doc. 62).   No party has requested oral

18   argument.   For the reasons that follow, the Court will grant the motion in part and deny it

19   in part.

20   **I.    The Admissibility Standard.**

21        Federal Rule of Evidence 702 imposes a special obligation on trial judges to

22   "ensure that any and all scientific testimony . . . is not only relevant, but reliable."

23   *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).   Plaintiffs bear the

24   burden of proving that their experts' opinions are relevant and reliable.   *Kumho Tire Co.*

25   *v. Carmichael*, 526 U.S. 137, 141 (1999); *Bourjaily v. United States*, 385 U.S. 171, 175

26   (1987).   "A trial court not only has broad latitude in determining whether an expert's

27   testimony is reliable, but also in determining *how* to determine the testimony's

28   reliability."   *El Sayed Mukahtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1064 (9th

Cir. 2002) (emphasis in original).

In December of 2000, Rule 702 was amended to codify the gatekeeping requirements of *Daubert*. The Advisory Committee Note to the 2000 amendment is instructive:

> A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."

Fed. R. Ev. 702 advisory committee note (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996)). The Advisory Committee further noted that proponents of expert testimony "'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable. . . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'" *Id.* (quoting *In Re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3rd Cir. 1994)). As one court has explained: "[i]n serving its gatekeeping function, the court must be careful not to cross over into the role of factfinder. It is not the job of the court to ensure that the evidence heard by the jury is error-free, but to ensure that it is not wholly unreliable." *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F.Supp.2d 908, 928 (W.D. Wis. 2007).

Thus, one notable commentator has observed that the 2000 amendments to Rule 702 "were not intended to signal an abandonment of the liberal attitude of the Federal Rules of Evidence toward the admissibility of opinion testimony." 4 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 702.05[2][a] (2d. ed. 2011). Nor were they intended to suggest that courts should place less reliance on the traditional tools of the adversary system for finding truth. As the Supreme Court explained in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

## II.    Dr. Michael Sucher.

### A.    Disclosure issues.

On May 6, 2011, the Court entered an order governing the disclosure of expert opinions in this case.  The order required Plaintiffs to "provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than June 17, 2011."  Doc. 17 at 1.  Defense expert reports were required on July 15, 2011, and Plaintiffs' rebuttal expert disclosures, if any, were required by August 5, 2011. *Id.*  Expert depositions were to be finished by August 19, 2011.

The Court made clear that full and complete disclosures were required by these dates.

> As stated in the Advisory Committee Notes to Rule 26 (1993 Amendments), expert reports disclosed under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefor."  Full and complete disclosures of such testimony are required on the dates set forth above. Absent truly extraordinary circumstances, parties will not be permitted to supplement their expert reports after these dates.

*Id.* at 2.

Plaintiffs disclosed the initial expert report of Dr. Sucher on June 16, 2011.  The report is very brief and contains little explanation of Dr. Sucher's opinion that Plaintiff Nicolai Tavilla was mentally incompetent during the time period in question.  Doc. 42-1 at 2-9.  In response, Defendant disclosed an opinion by Dr. Paul Berkowitz.  The Berkowitz opinion largely critiqued the basis and methodology used in the Sucher report. In reply, Plaintiffs disclosed a rebuttal report by Dr. Sucher.  Doc. 42-1 at 38-91.  The rebuttal report contains more detail concerning the basis for Dr. Sucher's opinions.

Defendant also chose to conduct a detailed deposition of Dr. Sucher and to inquire into the basis for his opinions.  Defense counsel could have limited the deposition and required Dr. Sucher to stand on his reports, but instead allowed him to expand his

1   explanations and opinions.  To the extent defense counsel chose to do so, Defendant

2   clearly was on notice of his opinions and explanations and the Court would find it unfair

3   to hold that Dr. Sucher could not restate them.  As a result, the Court will consider the

4   initial report, rebuttal report, and deposition of Dr. Sucher in ruling on this motion.

5        The Court will not consider the declaration attached to Plaintiffs' response to the

6   motion.  Doc. 52 at 2-13.  Not only was the new material contained in the declaration

7   disclosed after the discovery period had closed, but the Court specifically advised the

8   parties that, "absent truly extraordinary circumstances," they would not be permitted to

9   supplement their expert reports after the dates set in the Court's order.  Doc. 17 at 2.

10  Plaintiffs make no attempt to identify extraordinary circumstances that prevented them

11  from making full disclosure on the dates set by the Court.  Plaintiffs did not ask that the

12  dates be extended, nor did they seek permission to provide a supplement to the report.

13  The declaration attached to their response is untimely and will not be considered.

14       **B.    The Requirements of Rule 702.**

15       Rule 702 governs the opinion testimony of a witness "qualified as an expert by

16  knowledge, skill, experience, training, or education."  Fed. R. Ev. 702.  Such opinion

17  testimony is admissible if four requirements are satisfied:  (1) the expert's scientific,

18  technical, or other specialized knowledge will help the trier of fact in understanding the

19  evidence or to determine a fact in issue, (2) the testimony is based on sufficient facts or

20  data, (3) the testimony is the product of reliable principles and methods, and (4) the

21  expert has reliably applied the principles and methods to the facts of the case.  *Id*.

22  Defendant's motion asserts that the second and third requirements have not been met –

23  that Dr. Sucher lacks sufficient facts or data to render his opinion, and that he did not use

24  a reliable methodology.

25       Defendant does not dispute that Dr. Sucher is qualified to render opinions on the

26  effects of addiction to narcotic pain medication.  In addition to being licensed to practice

27  medicine in Arizona and California and being board certified by the American Board of

28  Addiction Medicine, Dr. Sucher is the addiction specialist for the Arizona Medical

1   Board, Arizona State Board of Dental Examiners, Arizona Medical Association, Arizona
2   State Board of Osteopathic Examiners, Arizona State Board of Nursing, Arizona Board
3   of Chiropractic Examiners, and the State Bar of Arizona.  He has been associated with
4   numerous Phoenix-area hospitals and was president of the American Society of
5   Addiction Medicine for 12 years.  Doc. 51.

6           In determining whether Dr. Sucher's opinion is based on sufficient facts or data,
7   the Court will consider the facts and data set forth in his initial report, rebuttal report, and
8   deposition.  Those sources show that Dr. Sucher's opinion that Plaintiff Nicolai Tavilla
9   was mentally incompetent while taking the drug Actiq includes the following:  In
10  additional to Actiq, Mr. Tavilla was prescribed Oxycontin, Percocet, Vistaril, and
11  Valium; Dr. Barnes prescribed Mr. Tavilla ever increasing dosages of Schedule II and III
12  narcotics, as well as other medications which would have the capability of increasing the
13  effects of the narcotics; Mr. Tavilla began to experience a variety of physical symptoms
14  during the period that the pain medications were prescribed; this course of treatment
15  constituted gross over-prescription of dangerous narcotic medications, particularly Actiq;
16  Mr. Tavilla was demonstrating addictive behavior during the course of this treatment;
17  these medications affect the central nervous system and include the effects of analgesia,
18  sedation, euphoria, mental clouding, anxiety, and confusion; Dr. Barnes' records show
19  that Mr. Tavilla displayed an inability to follow through with referrals, was unable to
20  keep appointments, was unable to follow medical prescription regimes, depended on his
21  spouse to assist with his current problems, inaccurately reported medical information,
22  displayed an inability to understand information given to him, and experienced
23  fluctuations in mood; Mr. Tavilla was psychologically and physically addicted to
24  dangerous narcotics, specifically Actiq, which caused him to be mentally and emotionally
25  unstable, thereby negatively affecting his ability to relate to others and rendering him
26  incompetent to make any decisions affecting his rights, actions, health, and legal matters.
27  Docs. 42-1 at 2-9, 38-51.

28          The Court cannot conclude that this information, when combined with Dr.

1   Sucher's extensive expertise in addiction medicine, was clearly insufficient to support an

2   opinion on Mr. Tavilla's mental competency.  Defendant identifies various categories of

3   information that Dr. Sucher did not consider, including actions that Mr. Tavilla took

4   during the years in question to protect his legal rights and information contained in the

5   medical records of other doctors.  Defendant also notes that Dr. Sucher reached the

6   opinions stated in his initial report before considering much of the information set forth in

7   his rebuttal report.  The Court concludes, however, that the facts set forth above are

8   sufficient to satisfy the threshold reliability requirements of Rule 702.  Facts not

9   considered by Dr. Sucher, or first considered after he had expressed an opinion, will

10  provide a fertile basis for cross-examination, but the Court does not find that they provide

11  a basis for excluding Dr. Sucher's testimony altogether.

12          The Court reaches the same conclusion with respect to Dr. Sucher's methodology.

13  When asked to describe the methodology used in reaching his opinions, Dr. Sucher relied

14  on his years of experience in addiction medicine.  As noted above, that experience is

15  substantial.  "Despite the importance of evidence-based medicine, much of medical

16  decision-making relies on judgment – a process that is difficult to quantify or even to

17  assess qualitatively.   Especially when a relative experience base is unavailable,

18  physicians must use their knowledge and experience for weighing known factors along

19  with the inevitable uncertainties to make a sound judgment."  *Primiano v. Cook*, 598 F.3d

20  558, 565 (9th Cir. 2010) (citation, internal quotation marks, and brackets omitted).

21  Again, Defendant will be permitted to cross-examine Dr. Sucher on his conclusion that

22  the facts set forth above support an opinion that Mr. Tavilla was not mentally competent

23  during the years at issue.  As already noted, vigorous cross-examination is still the

24  preferred method for determining the truth of questionable opinion evidence.

25  **III.    Dr. Grubb.**

26          Plaintiffs argue that Dr. Grubb is a treating physician, not a specially retained

27  expert, and that her opinions therefore are not subject to *Daubert*.  Doc. 51 at 11.  This

28  clearly is incorrect.  Rule 702 applies to any opinion testimony based on knowledge,

skill, experience, training, or education.   Indeed, Rule 701, governing lay opinion testimony, specifically states that opinion testimony may not be admitted under Rule 701 (and thereby evade the requirements of Rule 702) if it is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Ev. 701(c).  The purpose for this requirement is to ensure that any specialized or expert opinion evidence is funneled through the admissibility requirements of Rule 702, including the testimony of treating physicians.  *See, e.g., Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1201, 1207 (8th Cir. 2000) ("a treating physician's expert opinion . . . is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation.")

Because Dr. Grubb was not specially retained for this litigation, she was not required to produce an expert report under Rule 26(a)(2)(B).  Doc. 42 at 8.  In their disclosure statement, Plaintiffs stated that Dr. Grubb would opine that Nicolai Tavilla was not competent to make decisions concerning his personal affairs during the years he was taking Actiq.  Doc. 42-1 at 69.

Plaintiffs produced a second disclosure statement on behalf of Dr. Grubb that responded to opinions of defense expert Berkowitz.  Doc. 42-1 at 74-84.  Portions of this disclosure statement set forth new opinions – opinions not formed during Dr. Grubb's alleged treatment of Mr. Tavilla.  Doc. 42-1 at 81-84.  For such opinions, Dr. Grubb was required to produce a detailed expert report under Rule 26(a)(2)(B).  *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) ("a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment"; for opinions formed outside the course of treatment, a Rule 26(a)(2)(B) report is required).   Because Plaintiffs' second disclosure statement clearly does not comply with the requirements of Rule 26(a)(2)(B)[1], the Court will not consider opinions of Dr. Grubb that were formed

---

[1] For example, the disclosure statement is not signed by Dr. Grubb, does not set forth her qualifications, does not list publications she authored in the previous ten years,

1    outside the course of her treatment of Mr. Tavilla.  The Court will also disregard the

2    declaration of Dr. Grubb attached to Plaintiffs' reply (Doc. 52-2 at 37-40) because it, like

3    Dr. Sucher's declaration, is untimely under the Court's scheduling order.  Thus, in

4    evaluating the sufficiency of Dr. Grubb's opinion under Rule 702, the Court will consider

5    only her initial disclosure statement, portions of the second disclosure statement that

6    address opinions formed during treatment (Doc. 42-1 at 74-80), and her deposition.

7           During her deposition, Dr. Grubb equivocated on whether Mr. Tavilla was her

8    patient, stating that she "really didn't think of him that way," didn't see him as an

9    "official" patient, and would not have responded yes if someone asked her if Mr. Tavilla

10   was her patient.  Doc. 42 at 9.  When required by subpoena to produce documents related

11   to her treatment of Mr. Tavilla, Dr. Grubb produced only one psychological test

12   conducted in 2003 (before the events at issue here) and a declaration prepared in August

13   of 2007 in one of Mr. Tavilla's other lawsuits.  She produced no treatment records, no

14   notes, and no other documentation of visitations with Mr. Tavilla.  When asked why she

15   did not have documentation of her treatment, she gave varying responses, including that

16   they could have been destroyed in a flood, were only contained on a notepad in her car,

17   and could have been shredded inadvertently with other documents.  Doc. 42 at 10-11.

18   When asked to describe her methodology, she said it was based on clinical interviews,

19   asserting that "you know very quickly that they're mentally deficient and you don't have

20   to do official tests to determine that."  *Id*. at 12.

21          In short, Dr. Grubb has provided nothing but her "I know it when I see it" opinion

22   that Mr. Tavilla was mentally incompetent during the years in question.  She has failed to

23   support her opinion with treatment records, clinical notes, diagnostic tests, dates of

24   treatment, details of treatment, or any other record of traditional medical care.  Her

25   methodology is just as sparse – she states that she saw Mr. Tavilla, talked to him, and

26   knew he was not competent.  The Supreme Court has made clear, however, that "nothing

27
28   does not list other cases in which she has testified as an expert in the previous four years,
     and does not set forth the amount of her compensation.  *See* Fed. R. Civ. P.
     26(a)(2)(B)(i)-(vi).

in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Given the sparse factual basis for her opinions and the scant information on her methodology, Plaintiffs were obligated, in response to Defendant's motion, to show that Dr. Grubb's opinions are admissible under Rule 702.  *Kumho Tire*, 526 U.S. at 141; *Bourjaily*, 385 U.S. at 175.  Plaintiffs clearly failed to do so.  Instead of showing the factual basis for Dr. Grubb's opinions and the reliability of her methodology, Plaintiffs argued that she is not subject to *Daubert* and that she lacks records because she was seeing Mr. Tavilla on a "pro bono" basis.  Even if it is true that Dr. Grubb saw Mr. Tavilla on a non-paid basis, this does not excuse the requirement that Plaintiffs show that her opinions satisfy the four requirements of Rule 702.  Because Plaintiffs have failed to make any showing as to the reliability of her opinions, the Court will **grant** Defendant's motion with respect to Dr. Grubb.

**IT IS ORDERED** that Defendant's motion to exclude (Doc. 42) is **granted** with respect to Dr. Grubb and **denied** with respect to Dr. Sucher.

Dated this 10th day of April, 2012.

_____
David G. Campbell
United States District Judge