**LEWIS AND ROCA LLP — LAWYERS**

40 North Central Avenue, Ste. 1900
Phoenix, Arizona 85004-4429

Stephen M. Bressler, State Bar No. 09032
   Direct Dial:  (602) 262-5376
   Direct Fax:  (602) 734-3742
   Email:  SBressler@LRLaw.com
Kathleen Kahn, State Bar No. 027350
   Direct Dial:  (602) 262-5792
   Direct Fax:  (602) 734-3910
   EMail:  KKahn@LRLaw.com

Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543

John F. Brenner, admitted *pro hac vice*
   Direct Dial:  (609) 951-4193
   Direct Fax:  (609) 452-1147
   EMail:  BrennerJ@pepperlaw.com

Attorneys for Defendant Cephalon, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| NICOLAI TAVILLA and DONNA TAVILLA, on behalf of themselves and their two minor daughters, K.T., A.T., and BRITNY TAVILLA, on behalf of herself,<br><br>Plaintiffs,<br><br>vs.<br><br>CEPHALON, Inc.,<br><br>Defendant. | No. CV11-00270-PHX-DGC<br><br>**CEPHALON'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL** |

**1.    Introduction.**

Plaintiffs' opposition to defendant's motion to disqualify Mr. Treon can be fairly summed up by a single sentence on the last page of their brief: "Cephalon is the party that elected to make Plaintiff's counsel a witness."  Dct. 123, Plaintiffs' brief at 15, l. 6.

The statement is both incorrect and irrelevant.

It is incorrect because Mr. Treon raised the competency issue and then cited to himself for factual support.  This saga began when defense counsel asked Mr. Treon at the outset of the case how his client would be able to survive the statute of limitations when his client called Cephalon and sought a settlement.  After the passage of some time and apparent thought, Mr. Treon answered that the statute of limitations should be tolled

because his client was not of sound mind.  Defense counsel thereafter conducted limited research and learned that (1) Mr. Treon had Mr. Tavilla execute a Deed of Trust to secure a Promissory Note to Mr. Treon's firm; (2) Mr. Treon represented Mr. and Mrs. Tavilla in other litigation and obtained a monetary award in 2006; and (3) on February 23, 2007, Mr. Treon filed suit on behalf of Mr. and Mrs. Tavilla for personal injuries.  Mr. Tavilla's participation in these matters during the period of his claimed incompetence (apparently without appointment of a guardian) bore directly on the issue of his ability to manage his affairs and pursue his legal rights.  It appeared Mr. Treon had direct and material information regarding these matters.  Accordingly, defense counsel wrote Mr. Treon and pointed out that he would be a factual witness if his client proceeded with this defense.  Dct. 117-3.

In response, Mr. Treon did not dispute the assertions, withdraw the defense, bring the matter to the attention of the Court or seek replacement counsel.  To the contrary, he expanded his role in the case.  He willing testified at a deposition where he volunteered that:

- He was "a surrogate member of the Tavilla family for 16 years."  Dct. 117-2, 8/17/11 Deposition of R. Treon, at 11:4-5.
- He is known as "Uncle Dick" to the Tavillas' daughters and "Papa" to Britny Tavilla's daughter.  *Id.* at 11:2-4.
- He was Nicolai Tavilla's "de facto guardian."  *Id.* at 9:24-10:1-14; "I was assisting him in managing his affairs." *Id*. at 10:18-19.

And he followed up his deposition by taking the very unusual step of submitting his own 22-page, fact-laden declaration.  In this declaration, he explained that he was a "percipient witness to Mr. Tavilla's ability to manage his day-to-day affairs and was a mixed percipient/legal witness regarding his ability to understand his legal rights and liabilities…."  "Accordingly, it [was] necessary for [him] to detail [his] involvement in Mr. Tavilla's life and legal activities."  Dct. 52-2, October 17, 2011 Declaration of Richard T. Treon, fn. 1.

3059037.1



Finally, Mr. Treon hired an expert (Dr. Michael Sucher) to opine on the competency issue. Rather than have Dr. Sucher conduct his own independent investigation, Mr. Treon provided him select medical records and shared his observations with Dr. Sucher. Upon this foundation, Dr. Sucher came to his opinions.[1]

Plaintiff's argument is also irrelevant because — regardless of who involved him in this dispute — Mr. Treon is an important fact witness:

    a.    His interactions with Mr. Tavilla during the time period in question cause him to have material information, prejudicial to his client, that cannot be secured by other means (even assuming that is the standard under ER 3.7). *See* pages 3-5.

    b.    Plaintiffs' expert witness regarding Mr. Tavilla's "unsound mind," Dr. Sucher, specifically relied on Mr. Treon's observations and testimony, which, according to plaintiffs' own expert "provide explanation and evidence that Mr. Tavilla was not able to manage his affairs…." *See* page 6; and

    c.    In electing to submit a declaration in opposition to defendant's motion for summary judgment, Mr. Treon declared himself to be "a percipient witness to Mr. Tavilla's ability to manage his day-to-day affairs…." and asserted that his testimony was "necessary" to resolution of the statute of limitations issue. *See* pages 6-8.

Mr. Treon is a witness because of all he saw and did over many years, both in his role as Mr. Tavilla's attorney and as his friend. He is a witness because he – not Cephalon – made him one.

**2.  Mr. Treon's Extended Personal And Professional Relationship With Mr. Tavilla Causes Him To Have Relevant Information, Not Available Elsewhere, That Is Prejudicial To Mr. Tavilla's Case.**

Mr. Treon is a witness wholly apart from his submission of a declaration in opposition to summary judgment. As was set forth in Cephalon's initial memorandum (at 4-5), during the relevant time period, Mr. Treon:

    (1)    had Mr. Tavilla execute a Deed of Trust to secure a Promissory Note (to Mr. Treon's firm);

    (2)    presented Mr. Tavilla for three depositions, without objection to his competence;

---

[1] Cephalon moved to exclude this testimony because it did not meet Federal Rule of Evidence 702 admissibility standards. Dct. 42

3



      (3)    instituted suit on Mr. Tavilla's behalf and had him execute medical authorizations without raising any objection as to his competence; and

      (4)    had Mr. Tavilla execute settlement-related documents, again with no assertion that he was incapable of managing his affairs.

Plaintiffs assert that Cephalon "implies that somehow Plaintiff's counsel acted inappropriately in having a person counsel believed not to be competent sign such documents," and that Cephalon has claimed Mr. Treon "was acting unethically in allowing a client he believed to be mentally incompetent" to sign settlement documents.  Dct. 123, Plaintiffs' brief at 9, 10.  Cephalon has never advanced such arguments, nor made such implications.  In fact, defendant's position is exactly the opposite:  that Mr. Treon is a highly ethical attorney and, as such, he must have perceived his client as capable of managing his affairs when he had him sign settlement documents and the like.[2]  Contrary to plaintiffs' assertions, Cephalon assumes that Mr. Treon acted at all times in a professional and ethical manner.  Indeed, that assumption is in large measure what makes this evidence so powerful:  Cephalon will argue to the trier of fact that in having his client give testimony, execute medical authorizations, execute Releases -- and, by personally taking a Deed of Trust from him -- no other reasonable inference can be drawn but that Mr. Treon perceived that his client was fully competent and capable of managing his affairs.[3]

Plaintiffs offer several explanations as to why Mr. Treon had Mr. Tavilla sign documents and the like during the time they now claim he was unable to manage his

---

[2] Mr. Treon assessed Mr. Tavilla's competency and allowed him to testify, sign releases and enter into settlements because he believed Mr. Tavilla was competent.  And, as Mr. Treon explained in his declaration, he did not allow him to do so when he believed Mr. Tavilla was not competent.  Specifically, Mr. Treon testified that he did not have Mr. Tavilla testify at the January 2008 arbitration, "because he was not mentally competent in undersigned counsel's opinion to testify."  Dct. 52-2, ¶21.  That was the only instance where Mr. Treon allegedly prevented Mr. Tavilla's participation in the legal process.

[3] This point is especially significant in respect of Mr. Tavilla's execution of Releases and other settlement-related documents.  As an experienced and ethical personal injury attorney, Mr. Treon surely would have advised counsel for the defendant accepting the Release of any concern that plaintiff was of "unsound mind," thereby voiding the settlement.  Mr. Treon's conduct in tendering settlement documents signed by Mr. Tavilla is consistent with only one conclusion:  that Mr. Tavilla was of sound mind.

4

1  affairs: that these were "ministerial acts;" that "it was in the best interests of Mr. Tavilla,"
2  and that "Mrs. Tavilla was the one that handled the matters and procured the signatures."
3  Plaintiffs' brief at 10. The trier of fact may accept those explanations, or it may not. But
4  having put his competence at issue, plaintiffs cannot now prevent defendant from
5  challenging their assertion by preventing it from using the testimony on that subject only
6  Mr. Treon can provide.
7       Mr. Treon's conduct and action are "prejudicial" to at least that aspect of plaintiffs'
8  case -- even assuming a showing of such prejudice is necessary under the current Ethical
9  Rule.[4] Moreover, <u>only</u> Mr. Treon can provide that testimony (assuming that is a
10 prerequisite to disqualification). Only Mr. Treon can testify as to why he accepted a Deed
11 of Trust -- an activity in which he was not acting as the Tavilla's counsel -- from a person
12 purportedly incapable of managing his affairs. Only Mr. Treon can explain why -- if it was
13 truly the case that Mr. Tavilla was incapable of managing his affairs -- he did not disclose
14 that fact to opposing counsel accepting Releases or other settlement documents on which
15 their clients would reasonably rely. Only Mr. Treon can give an explanation – if one there
16 be – as to how Mr. Tavilla was permitted to testify at multiple depositions, again without
17 advising opposing counsel that the deponent was of unsound mind (but on another occasion
18 allegedly prevented him from testifying at an arbitration).
19      Cephalon had nothing to do with those activities, and did not "make" Mr. Treon a
20 witness. The reality is that Mr. Treon <u>is</u> a witness, and Cephalon is entitled to his
21 testimony.

---

[4] Plaintiffs argue that under *Cottonwood Estates*, disqualification must be supported by proof that the evidence from counsel will be material, unobtainable elsewhere, and "is or may be prejudicial to the testifying attorney's client." Plaintiffs' brief at 9. While *Cottonwood Estates* is instructive in part, it construed former Disciplinary Rule 5-102(B), not the current Rule, ER 3.7. The former Disciplinary Rule contained language regarding a lawyer's testimony being prejudicial and not obtainable elsewhere; ER 3.7 contains no such language. Rather, the current Rule states a flat prohibition (subject to three exceptions): "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Defendant submits that under the current ER, the requirements that an attorney's evidence be unobtainable elsewhere, and prejudicial to his client, no longer obtain. But even if they do, on this record, those requirements are met.

**3.   Plaintiffs' Expert Relies On Mr. Treon's Perceptions And Statements In Formulating His Opinion As To Mr. Tavilla's "Unsound Mind".**

Dr. Michael Sucher is plaintiffs' proffered expert regarding their "unsound mind" assertion. In his rebuttal report, Dr. Sucher stated, in part, "it is my opinion that deposition testimony given by Mr. Treon will provide explanation and evidence that Mr. Tavilla was not able to manage his affairs…" (*See* Exhibit A to Defendant's Initial Memorandum, Dct. 117-1).

Cephalon must be permitted the opportunity to challenge all the bases of Dr. Sucher's opinion. Where, as here, one of the bases is the statement or testimony of a witness [Mr. Treon], defendant should be allowed to have the trier of fact evaluate the witness' statements firsthand (and subject to cross-examination), by observing that witness on the stand, not filtered through plaintiffs' expert.

Plaintiffs now assert that Dr. Sucher "will not rely upon anything he was told by counsel or Ms. Bailey or in counsel's deposition in support of his opinion…" Plaintiffs' brief at 3. But having tendered that expert, and having had him rely on Mr. Treon's testimony, plaintiffs should not now be able unilaterally to remove one of the bases of his opinion, thereby depriving defendant of an important cross-examination right.

In this instance, too, Cephalon did not "make" Mr. Treon a witness. Clearly, Cephalon had nothing to do with plaintiffs' expert's selection of the facts on which he would base his opinion. The one person who did have that opportunity was Mr. Treon. Certainly with respect to this aspect of plaintiffs' case, Mr. Treon's status is that of volunteer, not draftee.

**4.   By Submitting His Declaration In Opposition To The Motion For Summary Judgment, Mr. Treon Again Made Himself A Witness.**

Much of plaintiffs' brief is devoted to argument as to why Mr. Treon's declaration[5] -- specifically relied upon by the Court in denying summary judgment -- should now, in

---

[5] As discussed above, Mr. Treon will be a witness irrespective of his submission of the declaration.



1  effect, be disregarded. Yet again, plaintiffs claim that Cephalon "made" Mr. Treon submit
2  his declaration: they assert that defendant made "counsel's testimony an issue in its
3  summary judgment motion" (Plaintiffs' brief at 3); that the declaration was offered "to
4  correct the record and inform the Court regarding legal matters Defendant had raised"
5  (Plaintiffs' brief at 4); and that Mr. Treon's declaration testimony is only "cumulative."
6  Plaintiffs' brief at 5, n.2.

7  But that was not the position plaintiffs advanced when they submitted the
8  declaration. At the very outset of his declaration, Mr. Treon testified:

> In addition, because Plaintiff claims he was of unsound mind during the time period prior to two years before the lawsuit was filed on September 15, 2010 (i.e., before September 15, 2008) and because undersigned counsel was <u>a percipient witness</u> to Mr. Tavilla's ability to <u>manage his day-to-day affairs</u> and was a mixed percipient/legal witness regarding his ability to understand his legal rights and liabilities, it is <u>necessary</u> for me to detail my involvement in Mr. Tavilla's life and legal activities.

Dct. 52-2, October 17, 2011 Declaration of Richard T. Treon, fn. 1 (emphasis added).

Now, plaintiffs assert Mr. Treon's declaration was only offered to correct the record (though they provide no examples of any such corrections) and because defendant purportedly made his testimony an issue;[6] then, Mr. Treon affirmatively held himself out as a "percipient witness" with firsthand information regarding Mr. Tavilla's "ability to manage his day-to-day affairs," all in support of <u>plaintiffs'</u> claim of unsound mind.

Now, Mr. Treon's declaration is characterized as merely "cumulative." Then, Mr. Treon testified that it was "necessary" for him "to detail my involvement in Mr. Tavilla's life and legal activities."

Now, plaintiffs seek to characterize Mr. Treon's declaration as doing little more than describing his activities in representing Mr. Tavilla in other litigation. But nearly one-third of the declaration is devoted to Mr. Treon's "personal periodic observations of Mr. Tavilla during the time period January, 2006 through the spring of 2009," and have little, if

---

[6] The only references to Mr. Treon's testimony in the motion for summary judgment were three: that he raised no objection to Mr. Tavilla's appearance at deposition; that he had Mr. Tavilla sign authorizations for release of medical records; and that he had never sought to have a guardian appointed for him. Dct. 76, DSOF ¶ 72, 73 and 74.



1  anything to do with his representation of Mr. Tavilla as an attorney.  *See, e.g.,* Treon
2  Declaration, Paragraphs 17, 18, 19, 22, 23.

3  Mr. Treon now asserts that it was never his "intention … to testify in this case."
4  Plaintiffs' brief at 3.  Yet that is exactly what he did by submitting his declaration.  And his
5  declaration was not limited to informing the Court "regarding the legal matters Defendant
6  had raised."  Plaintiffs' brief at 4.  The declaration was, on its face, an effort to defeat
7  summary judgment with testimony of a self-identified "percipient witness" desirous of
8  convincing the Court that Mr. Tavilla was unable to manage his day-to-day affairs.  And it
9  worked.

10  If Mr. Treon's testimony had truly been viewed by plaintiffs as cumulative or
11  unnecessary, they would not have submitted it.  But they chose to do so; they prevailed on
12  the motion; and they should not now be permitted to walk away from that (presumably
13  carefully evaluated) decision.[7]

14  **5.   Plaintiffs' Suggestion That The Court Should Issue A "Re-Ruling" Of Its Summary Judgment Decision Should Be Rejected.**
15

16  Plaintiffs suggest that Mr. Treon can only be called as a witness if defendant can
17  "establish that this Court would have granted the motion for summary judgment except for
18  the testimony of undersigned counsel."  Plaintiffs' brief at 8.  Plaintiffs offer no legal
19  support for this proposition; there is none.

20  The Court decided the summary judgment motion on the basis of the record
21  presented to it by the parties.  Plaintiffs <u>chose</u> to submit the declaration of Mr. Treon, in
22  which he held himself out as a percipient witness with personal knowledge of Mr. Tavilla's
23  claimed inability to manage his day-to-day affairs.  <u>Plaintiffs</u> -- not defendant -- took the
24  position that Mr. Treon's testimony was "necessary" to the motion's disposition.  Plaintiffs

---

[7] In that respect, the fact that defendant raised the issue of ER 3.7 at the very outset of the case (in April 2011) is significant.  Based on the limited information available to it at that point, Cephalon foresaw that Mr. Treon would potentially be a material and significant witness with respect to the "unsound mind" issue, and it put him on notice of that fact before he invested more time and energy in the case.  Yet in the face of that caution, Mr. Treon went out of his way to submit his declaration containing his personal observations of Mr. Tavilla, and his views of Mr. Tavilla's ability to manage his affairs.

1  now suggest that they really didn't have to submit Mr. Treon's declaration.  But they did,
2  and the Court denied the motion, specifically relying on it.
3       In effect, plaintiffs claim that the Court must somehow "re-rule" on the motion, but
4  without the declaration of Mr. Treon.  There is no precedent for such a proceeding.
5  Plaintiffs made their strategic and tactical decisions in contesting the motion -- they cannot
6  so lightly escape the consequences of those decisions.
7       Plaintiffs' contention that this motion for disqualification somehow implicates their
8  previous allegations of "fraud" with respect to the telephone calls to Cephalon initiated by
9  Mr. Tavilla is similarly without merit.  In denying plaintiffs' motion to amend the
10 Complaint, the Court ruled that (a) Cephalon had no affirmative duty to warn Mr. Tavilla
11 about using Actiq; (b) plaintiff had "failed to allege facts showing that Cephalon
12 intentionally concealed material facts about the dangers of taking Actiq;" (c) it was
13 "implausible that any alleged non-statements on the part of Cephalon representatives were
14 intended to hide information about the known risks of taking Actiq;" (d) it was "also
15 implausible to infer that Cephalon took actions calculated to prevent inquiry into the
16 matter;" (e) plaintiffs failed to allege facts "showing that Mr. Hirsch or any other Cephalon
17 representatives had a duty to inform Mr. Tavilla [of other pending lawsuits or the statute of
18 limitations];" (f) "plaintiffs have also not shown how Cephalon's failure to contact Mr.
19 Tavilla's doctor or lawyer about his injury and potential claims, even if required,
20 constitutes a failure to disclose or the concealment of facts from Mr. Tavilla, particularly
21 where Mr. Tavilla already knew the cause of his injuries and had been informed of what he
22 needed to do to seek compensation from Cephalon."  Dct. 94, May 3, 2012 Order at 22-23.
23      Moreover, this Court's denial of plaintiffs' reconsideration motion confirmed that
24 their "estoppel" arguments have already been rejected.  In that motion, plaintiffs argued --
25 again -- that defendant was estopped from asserting the statute of limitations based on what
26 its representatives had or had not told Mr. Tavilla on the telephone.  Dct. 96, Plaintiffs'
27 motion for reconsideration at 3-4.  But the Court addressed the "estoppel" argument and
28 "found that the fraud claims upon which Plaintiffs' estoppel arguments were based lacked

merit." Dct. 101, May 30, 2012 Order at 3. Plaintiffs have no "estoppel" argument.

**6.      Plaintiffs' Request For A "Bifurcated" Trial On The Summary Judgment Issue Should Be Rejected.**

Plaintiffs suggest that this disqualification issue can be avoided if the Court severs the statute of limitations issue and either submits it to a jury (without Mr. Treon's participation) or resolves it via a bench trial (with Mr. Treon's participation). Defendant objects to this procedure. Under ER. 3.7, an attorney cannot serve as both advocate and witness, irrespective of whether the trier of fact is a jury or a judge.

Plaintiffs should not be permitted to control when and to whom defendant presents its defenses. Defendant has multiple challenges and defenses to this suit; the statute of limitations is just one of them. The evidence overlaps those issues, and defendant should not be denied its opportunity to present its defense as a coherent whole, in the manner it believes best protects its interests. For example, evidence regarding Mr. Tavilla's belief in 2007 that Actiq was harming him, his efforts to secure compensation not just from Cephalon, but from Blue Cross Blue Shield, his retention of an attorney and initiation of a <u>timely</u> lawsuit against Blue Cross Blue Shield, among other things, bears not only on the statute of limitations, but on issues of proximate/alternative causation and damages. Requiring multiple presentations of the same facts imposes unnecessary inefficiencies on the Court, and unnecessary expense on defendant. Normal trial processes should not be abandoned to accommodate strategic and tactical decisions made by plaintiffs and their counsel.

In addition, although plaintiffs' suggestion for bifurcation proceeds from the notion that the statute of limitations issue can be neatly severed from the rest of the case, and that the proofs can be restricted to that issue, in practice that result is difficult to achieve. Plaintiffs will invariably argue that they are entitled to address issues of fault, causation and damages -- under the guise of giving the jury "context"[8] -- but will no doubt assert that

---

[8] Page 15 of plaintiffs' brief presents a précis of this approach: though not relevant to the legal issue before the Court, they close their arguments with an appeal to sympathy: that

10

3059037.1



defendants should be prohibited from advancing its defenses to those matters in the statute of limitations trial. The prejudice to Cephalon is great, and the potential for reversible error is high.

DATED this 22nd day of August, 2012.

| LEWIS AND ROCA LLP | PEPPER HAMILTON LLP |
|---|---|
| By  /s/ *Stephen M. Bressler*<br>    Stephen M. Bressler<br>    Kathleen Kahn | By  /s/ *John F. Brenner*<br>    John F. Brenner |

*Attorneys for Defendant Cephalon*

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of August, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

I further certify that on this 22nd day of August, 2012, I served the attached document by U.S. mail to:

Richard T. Treon
Treon, Aguirre, Newman & Norris
2700 N. Central Avenue, Suite 1400
Phoenix, Arizona  85004
Attorneys for Plaintiffs

/s/ *Kim P. Schueneman*

---

Cephalon failed "to act equitably" when Mr. Tavilla called and "begged… for help."  As is reflected in the Court's summary judgment Order, Mr. Tavilla was told what he needed to do to seek compensation -- provide records -- he just never did so.  Defendant expects plaintiffs to take the same approach to a severed statute of limitations proceeding.