**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicolai Tavilla, et al., | No. CV-11-00270-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Cephalon, Inc., a Delaware Corporation, | |
| Defendant. | |

Defendant Cephalon, Inc. has filed a motion to disqualify Plaintiffs' counsel Richard T. Treon. Doc. 117. The motion has been fully briefed. Docs. 123, 124. The Court heard oral argument on September 19, 2012. For the reasons that follow, the Court will grant the motion, but sever the trial on the statute of limitations defense.

**I.   Background.**

Defendant argues that Plaintiff Nicolai Tavilla's claim is barred by a two-year statute of limitations. In Arizona, the statute of limitations is tolled during the period that a plaintiff is of unsound mind. A.R.S. § 12-502. Unsound mind occurs when a person is unable to manage his affairs or to understand his legal rights or liabilities. *Allen v. Powell's Int'l, Inc.*, 518 P.2d 588, 589 (Ariz. Ct. App. 1974).

On May 3, 2012, the Court denied Defendant's motion for summary judgment on the statute of limitations defense because Plaintiffs had created an issue of fact as to whether Mr. Tavilla was unable to manage his affairs during the critical years in this case. Doc. 94. In opposing the motion, Plaintiffs had presented the declaration of Donna

Tavilla (Mr. Tavilla's wife) that while Mr. Tavilla was on Defendant's drug Actiq "he spent most of his time in bed and was unable to take care of his personal hygiene, do anything around the house, work to earn money, maintain vehicles, discipline the children, manage money, engage in any hobbies, have any kind of relationship[s]," and that getting Mr. Tavilla to his doctor's appointments required starting the previous day just to get him "cleaned up and out of the house."  Doc. 80-7, ¶¶ 6, 19.  The declaration stated that Mr. Tavilla had hallucinations, spoke to people who were not there (*id.*, ¶ 5), refused to sign paperwork for a settlement that would allow money to be deposited or distributed (*id.*, ¶ 12), and could not make decisions (*id.*, ¶ 15).

Plaintiffs also submitted the declaration of their attorney Richard Treon in opposition to the motion for summary judgment.  Mr. Treon's declaration stated:

> Based upon . . . personal periodic observations of Mr. Tavilla during the time period January, 2006 through the Spring of 2009, Mr. Tavilla was not mentally competent to manage his daily affairs nor did he understand his legal rights and liabilities.  All of the decisions that were made during that time period regarding Mr. Tavilla's affairs were made by his wife or made by me within the scope and authority previously vested in me . . . , and the authority was given me prior to the time he became mentally incompetent.

Doc. 80-7, ¶ 17.  Mr. Treon's declaration went on to describe Mr. Tavilla as bed-ridden and unable to use the bathroom.  *Id.*  Mr. Treon described going to the Tavilla's home and having to speak to Mr. Tavilla through a window to his bedroom because Mr. Tavilla would not let him enter and because he was physically incapable of getting out of bed, "having ballooned up to approximately 500 pounds and being sleepy because of drugs."  *Id.*  Mr. Treon further stated that Mr. Tavilla "seemed disoriented to time and place; and, most importantly, Mr. Tavilla's mind had disassociated from reality."  *Id.*  He described Mr. Tavilla seeing ghosts, believing his neighbor to be a witch, and believing that his wife, psychologist, and Mr. Treon were plotting to have him committed to a mental institution.  *Id.*  Mr. Treon stated that they did not seek to have Mr. Tavilla committed because of the extreme anger and threats evoked by this suggestion.  *Id.* at ¶ 19.

In explaining the denial of summary judgment, the Court said:

>Plaintiffs have presented evidence through the declarations of Donna Tavilla and Richard Treon that Mr. Tavilla was unable to get out of bed, go to the bathroom, care for his personal hygiene, or attend medical appointments on his own. They attest that he was not capable of making decisions or directing his personal affairs. To be sure, Cephalon's evidence of his participation in other litigation and his repeated phone calls to BCBS and Cephalon provides a potent basis for questioning these assertions – one that may well convince a jury that Mr. Tavilla was more capable than Plaintiffs contend – but this is precisely the kind of factual issue that precludes summary judgment.

Doc. 94 at 17.[1]

## II.   Analysis.

Defendant argues that attorney Treon must be disqualified from representing Plaintiffs at trial because he will be a witness at trial. Defendant bases its motion on Ethical Rule ("ER") 3.7 of the Arizona Rules of Professional Conduct, which apply to attorneys appearing before this Court under Local Rule of Civil Procedure 83.2(e). ER 3.7 provides that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless the testimony relates to an uncontested issue, the testimony relates to the value of legal services rendered in the case, or disqualification of the lawyer would work a substantial hardship on the client. Az. Supreme Ct. Rule 42, ER 3.7.

---

[1] In opposing Defendant's motion for summary judgment, Plaintiffs also argued (1) that the statute of limitations was tolled because Defendant's in-house counsel negligently failed to tell Mr. Tavilla during three phone calls in 2007 that, as a non-cancer patient, he should not be taking Actiq, and this fact estops Defendant from asserting the statute of limitations defense; (2) Defendant committed fraud through the omissions of its in-house counsel during these conversations and is therefore barred from raising the statute of limitations; and (3) the statute of limitations should be equitably tolled because of Defendant's fraud. The Court did not address these arguments because it found that Plaintiffs' evidence of Mr. Tavilla's unsound mind was sufficient to defeat summary judgment. Doc. 94 at 18 n. 5. Plaintiffs ask the Court to rule on these arguments now as possible grounds for defeating summary judgment that do not require reliance on Mr. Treon's affidavit. Doing so, the Court concludes that it would not have denied summary judgment on any of these grounds. The Court has already rejected Plaintiffs' fraud claims. *See* Doc. 94 at 18-24; Doc. 101 at 3-6. The Court is not persuaded that the alleged negligence of Defendant's in-house counsel estops Defendant from asserting the statute of limitations – the Court previously concluded that Defendant did not have an affirmative duty to disclose the statute of limitations. Doc. 94 at 22-23. As a result, Plaintiffs' sole method of defeating the statute of limitations argument is to show that the statute was tolled due to Mr. Tavilla's mental incapacity.

To avoid the use of ethical rules for the tactical disqualification of opposing counsel, Arizona law provides that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court*, 685 P.2d 1309, 1313 (Ariz. 1984). Motions to disqualify therefore "require careful scrutiny of the facts before such a result is permitted." *Security General Life. Ins. Co. v. Superior Court*, 718 P.2d 985, 988 (Ariz. 1986). As the Arizona Supreme Court has acknowledged, however, "the rules do permit a party to call adverse counsel as a witness and therefore there are times when counsel must be disqualified because an adverse party intends to call him as a witness." *Id.*

A lawyer may be disqualified under ER 3.7 only if he is a "necessary witness." Arizona applies a two-part analysis in determining whether a witness is necessary. First, the proposed testimony of the witness must be relevant and material. Second, the testimony must not be obtainable elsewhere. *Security General*, 718 P.2d at 988. Applying this test, the Court concludes that Mr. Treon's testimony is necessary.

Plaintiffs argue that evidence of Mr. Tavilla's incapacity during the years in question can be provided by his wife and children. Although it is true that these individuals could testify about Mr. Tavilla's physical condition during the relevant period, including his inability to function normally, Defendant seeks to attain a different kind of evidence from attorney Treon. Defendant seeks to present evidence that Mr. Treon represented Mr. Tavilla during the years of Mr. Tavilla's claimed disability, and that during those years Mr. Tavilla brought lawsuits, gave depositions, and signed a deed of trust to secure a debt to Mr. Treon's law firm without attorney Treon ever raising questions regarding his mental incapacity. This evidence goes beyond the description of Mr. Tavilla's daily activities that could be provided by family members. It seeks to show that Mr. Tavilla's attorney – someone who knew Mr. Tavilla well, and who knew that Mr. Tavilla had to be mentally competent to engage in litigation, testify under oath, and sign a deed of trust – never objected to Mr. Tavilla's engaging in any of these activities on the basis of mental incompetency. In other words, Defendant seeks to show that

someone very close to Mr. Tavilla, who understood that he was engaging in activities that required mental competency, believed Mr. Tavilla was capable of engaging in those activities. This provides evidence of Mr. Tavilla's ability to manage his affairs that goes beyond the mere description of his daily activities that could be provided by family members.

This evidence clearly is relevant and material to Defendant's claim that Mr. Tavilla was mentally competent and therefore subject to the statute of limitations. And this evidence cannot be obtained from members of Mr. Tavilla's family. Plaintiffs have presented no basis for the Court to conclude that Mr. Tavilla's wife or children understood the extent of his involvement in legal proceedings and, more importantly, understood the requirement of mental competency for those proceedings. Nor have Plaintiffs identified any other witness who could testify to the facts Mr. Treon asserted in his affidavit opposing summary judgment. Because both parts of the Arizona test are satisfied, the Court concludes that Mr. Treon's testimony is "necessary" within the meaning of ER 3.7.[2]

As noted above, ER 3.7 contains an exception for substantial hardship. Comment 4 to ER 3.7 addresses this exception and explains that, even if there is a risk that a lawyer's dual role as witness and advocate might result in prejudice to the opposing party or difficulties for the court, "due regard must be given to the effect of disqualification on the lawyer's client." *See* Ariz. Supreme Ct. Rule 42, ER 3.7,

---

[2] Relying on *Cottonwood Estates v. Paradise Builders*, 624 P.2d 296 (1981), Plaintiffs argue that Defendant must also show that Mr. Treon's testimony is or may be prejudicial to Mr. Tavilla. *Cottonwood* found this requirement under the predecessor to ER 3.7 – Disciplinary Rule 5-102. 624 P.2d at 302. When the test for disqualification was restated under ER 3.7 in *Security General*, however, the Arizona Supreme Court omitted this requirement. *See* 718 P.2d at 988. *Security General's* omission of the prejudicial-to-client requirement does not appear to have been inadvertent. *Id.* Thus, the Court concludes that this requirement does not apply under ER 3.7. Even if the requirement did apply, however, the Court would conclude that it is satisfied in this case. Mr. Treon's testimony that he permitted Mr. Tavilla to file lawsuits, give depositions, and sign legal documents during the years in question, all while Mr. Treon knew that he must be of legally sound mind to do so, would be detrimental to Mr. Tavilla's claim that the statute of limitations should be tolled due to his mental incompetency.

Comment [2003 Amendment].

Plaintiffs assert that they will not be able to find new counsel if Mr. Treon is disqualified. Plaintiffs contend that Mr. Treon has been representing them for years in this case and others, that his firm has invested several hundred thousand dollars in expenses in these cases that have resulted in liens against any recovery in this case, and that this case is complex, and made even more complicated by the statute of limitations and unsound mind issues. On the basis of these considerations, Plaintiffs assert that they will not be able to find new counsel and will be required to dismiss this case if Mr. Treon is disqualified.

Defendant notes that Mr. Treon, at the initial case management conference, said this case is worth millions of dollars, suggesting that counsel could be found to take over the case. Defendant also asserts that the ER 3.7 issue was entirely foreseeable, a factor to be considered under Comment 4 to ER 3.7.

The Court has considered a number of cases on the substantial hardship exception, none of which were cited by the parties. Those cases make clear that the exception is construed narrowly. They hold that difficulties encountered in changing counsel do not satisfy the exception. *See, e.g.*, *Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 31-32 (D. Mass 2006) (disqualifying attorneys even though they had represented client for 12 years and two other law firms had declined to take the case); *Freeman v. Vicchiarelli*, 827 F. Supp. 300, 304-05 (D.N.J. 1993) (disqualifying attorney despite "difficulty in finding alternative counsel," including plaintiff and counsel having contacted 27 attorneys without success); *United States v. Peng*, 602 F. Supp. 298, 303-04 (D.C.N.Y. 1985) ("Because of the strong policy considerations in support of the advocate-witness rule, courts have given the 'substantial hardship' exception 'a very narrow reading.'" (quoting *United States v. Johnston,* 690 F.2d 638, 642 n.9 (7th Cir.1982))); *Jones v. City of Chicago*, 610 F. Supp. 350, 361 (D.C. Ill. 1984) ("courts have generally rejected arguments that a lawyer's long-standing relationship with a client, involvement with the litigation from its inception or financial hardship to the client are

- 6 -

Case 2:11-cv-00270-DGC   Document 130   Filed 09/27/12   Page 7 of 9

sufficient reasons to invoke the "substantial hardship" exception to the advocate-witness rule."). Plaintiffs do not contend that they have tried to retain substitute counsel and have been unable to do so.

Construing the substantial hardship exception narrowly, and in light of the cases discussed above, the Court concludes that the exception has not been satisfied in this case. The Court also concludes that Defendant's motion is not brought purely for tactical reasons – as noted above, the Court finds Mr. Treon's testimony to be necessary on the statute of limitations defense. Thus, even applying the careful scrutiny of disqualification motions required by Arizona law, the Court concludes that the motion must be granted.

Heeding the suggestion in Comment 4 to ER 3.7 – that the Court should balance the interests of Plaintiffs against those of Defendant – the Court also concludes that the most equitable resolution of this issue is to bifurcate the statute of limitations defense and try it separately. This solution will permit Mr. Treon to represent Mr. Tavilla and the other Plaintiffs at trial if the statute of limitations defense fails, and will avoid an ER 3.7 problem at trial if the defense succeeds.[3] The Court does not view this solution as substantially disadvantaging Defendant. Much of the evidence on Mr. Tavilla's mental competency will have no relevance to the merits of the case and therefore will not need to be presented twice. Although some of that evidence will overlap with damages evidence, the Court does not view the overlap and its slight inefficiency as sufficiently prejudicial to outweigh the benefits of a separate trial. Nor does the Court conclude that Defendant's evidence and arguments on Mr. Tavilla's mental competency will somehow be compromised by being severed from the merits.

Federal Rule of Civil Procedure 42(b) permits the Court to hold separate trials on separate issues to avoid prejudice. The Court concludes that the rule should be applied

---

[3] Even if the defense succeeds against Mr. Tavilla, it does not apply directly to the claims asserted by his children who were minors while the limitations period was running. Assuming for the moment that their claims are not eliminated by a time-bar of Mr. Tavilla's claim – an issue the Court has not addressed – a trial of the children's claim would not include the mental incompetency of Mr. Tavilla. Mr. Treon therefore would not be a witness and could represent the children as trial counsel.

here to avoid prejudice to Plaintiffs, even though that prejudice does not rise to the level of the substantial hardship exception to ER 3.7.[4]

During the hearing on September 19, 2012, counsel for Defendant stated that Defendant would waive its right to a jury trial on the statute of limitations defense. Plaintiffs' counsel stated that Mr. Tavilla would also waive his jury trial right on the defense. The parties and the Court then discussed whether the outcome of the statute of limitations trial could affect the claims of the Tavilla children, a discussion that was inconclusive. If such an effect is possible, Plaintiffs' counsel was not in a position to state whether or not the children would waive their right to a jury trial on the statute of limitations issue. Thus, it cannot be said at this point whether the separate trial will be to the Court or a jury. If it is to the Court, Mr. Treon may represent Plaintiffs. If it is to a jury, Plaintiffs must arrange for separate counsel to try the statute of limitations issue.

**IT IS ORDERED:**

1. Defendant's motion to disqualify Plaintiffs' counsel (Doc. 117) is **granted**. Disqualification is granted with respect to a jury trial on the merits and a jury trial on the statute of limitations defense. Mr. Treon is not disqualified for purposes of pretrial litigation, *see Chapman Eng'rs, Inc. v. Natural Gas Sales Co.*, 766 F. Supp. 949, 958 (D. Kan. 1991), or a trial to the Court on the statute of limitations defense.

2. Plaintiffs' counsel shall, on or before **October 12, 2012**, notify defense counsel as to whether all Plaintiffs will waive a jury trial on the statute of limitations defense. If they will, the limitations defense will be tried to the Court; if they will not,

---

[4] Defense counsel suggested that Mr. Treon would likely be a witness at the damages phase of this case because Mr. Tavilla's health and mental status may be at issue, but the Court does not see the damages claim as presenting the same potential problems as the statute of limitations defense. The damages claim likely will be based primarily on the physical effects of Actiq on Mr. Tavilla. Although Plaintiffs may also contend that the drug affected his mental health, such a claim will not require the same precise determination of mental competency as the statute of limitations defense, and Mr. Treon's legal capacity testimony therefore will not likely be necessary to the defense within the meaning of ER 3.7. Moreover, if the statute of limitations trial determines that Mr. Tavilla was mentally incompetent during the years in question, that issue will have been resolved in this case and Defendant likely will be precluded from relitigating it during the merits trial.

- 8 -

the defense will be tried to a jury. On or before **October 19, 2012**, the parties shall file with the Court a memorandum stating whether the statute of limitations trial will be to the Court or a jury, and setting forth their view on when the trial should occur and how long it will take. The Court believes that the limitations defense likely can be tried in two days for a bench trial, three days for a jury trial.

Dated this 26th day of September, 2012.

_____
David G. Campbell
United States District Judge